252 P.3d 403 (2011)
STATE of Washington, Respondent,
v.
Brandon S. CORISTINE, Appellant.
No. 28868-4-III.
Court of Appeals of Washington, Division 3.
May 12, 2011.
Lisa Elizabeth Tabbut, Attorney at Law, Longview, WA, for Appellant.
Mark Erik Lindsey, Andrew J. Metts, III, Spokane County Prosecuting Attorneys, Spokane, WA, for Respondent.
SWEENEY, J.
¶ 1 This appeal follows a conviction for second degree rape. The State alleged, and its evidence showed, that the victim was not capable of consent because she had been drinking to excess. The defendant's evidence showed that the victim was capable of consent and included the defendant's own perception that he reasonably believed that the victim was capable of consent. The court then, over the defendant's objection, instructed the jury that it was an affirmative defense that the defendant reasonably believed that the victim was not mentally incapacitated and/or physically helpless. We conclude that the instruction was required by the evidence in this record, was not inconsistent with the defendant's defenses, and would be harmless in any event because the jury concluded that the victim was incapable of consent and the defenses were certainly consistent. We therefore affirm the conviction.

FACTS
¶ 2 L.F. began renting a room in a house where six other people lived on December 6, 2008. That night, the housemates invited friends over and had a party. L.F. drank alcohol with several of her new housemates and their friends. She went to bed when she started to feel drunk. One of her new housemates, Brandon Coristine, checked on her to see if she needed a garbage can. L.F. said she was fine and fell asleep.
*404 ¶ 3 The next thing L.F. remembered was someone pulling her pajama pants down and having sex with her while she was lying on her stomach, drifting in and out of consciousness. She felt disoriented for 10 or 15 minutes and then realized that someone had raped her. But she did not know who raped her because she had been "passed out, drunk." Report of Proceedings (RP) at 107. She walked across the hall to a room shared by two female housemates and talked about what had happened.
¶ 4 L.F. went to the hospital the next day for a sexual assault examination. Mr. Coristine learned what she was doing, called her while she was at the hospital, and told her, "I think it was me, I'm sorry. I was really drunk. I thought you wanted it." RP at 108. Test results from that exam confirmed that Mr. Coristine had had sex with L.F.
¶ 5 The State charged Mr. Coristine with second degree rape alleging that L.F. "was incapable of consent by reason of being physically helpless or mentally incapacitated." Clerk's Papers (CP) at 1. Mr. Coristine admitted at trial that he had sex with L.F. but said it was her idea.
¶ 6 Mr. Coristine testified on his own behalf as did his wife, Ashley Coristine, and his wife's sister, Tricia Van Dusen. All testified that L.F. did not get drunk at the party. They testified that L.F. flirted with Mr. Coristine throughout the night, that she repeatedly put her arms around him, touched his leg, grabbed his groin, and invited him upstairs for sex. And they testified that Mr. Coristine refused her advances.
¶ 7 Mr. Coristine testified he went to bed after the party ended but then heard a loud noise and went to check each bedroom. He testified that, when he got to L.F.'s bedroom door, she pulled him inside and begged him for sex. He testified that he refused at first but eventually gave in. He described L.F. as "[p]erfectly conscious and well aware of what was going on, forming perfect sentences." RP at 356. He said she was involved in the sexual encounter and was never unconscious. And he testified that she helped him pull her pants down and take his pants off, asked him how he wanted her positioned, and told him afterwards that she enjoyed it. He said he "had no reason to believe that she would" accuse him of rape. RP at 356.
¶ 8 The court proposed to instruct the jury on the statutory defense (RCW 9A.44.030(1)) that Mr. Coristine reasonably believed L.F. was not mentally incapacitated when they had sex. Mr. Coristine argued that his defense was that the State could not prove beyond a reasonable doubt that L.F. had been incapacitated. The trial court overruled Mr. Coristine's objection and instructed the jury on the "reasonable belief" defense. RP at 399, 409-10.
¶ 9 In his closing argument, Mr. Coristine argued that the State had the burden of proving that he committed second degree rape and that he had no obligation to prove that he did not do it. He argued that the State alleged he had sex with an incapacitated person but that the evidence showed the opposite was true, she was not incapacitated. Mr. Coristine argued that L.F. was not drunk, that she flirted with him, and that she was "quite capable of participating, did participate and was not incapacitated" when they had sex. RP at 442.
¶ 10 The jury found Mr. Coristine guilty.

DISCUSSION
¶ 11 Mr. Coristine contends the trial court should not have given the jury the "reasonable belief" instruction because (1) the instruction shifted the initial burden of proof to him, (2) the instruction amounted to a comment on the evidence, (3) the evidence did not support the instruction, and (4) he did not want to assert a "reasonable belief" defense.
¶ 12 Whether or not the court properly instructed the jury to consider Mr. Coristine's reasonable belief of L.F.'s capacity to consent is a question of law that we will review de novo. State v. Pirtle, 127 Wash.2d 628, 656, 904 P.2d 245 (1995).
¶ 13 The State had to prove that (1) Mr. Coristine had sex with L.F., (2) the act occurred when L.F. was incapable of consent by reason of being mentally incapacitated or physically helpless, and (3) the act occurred in Washington. RCW 9A.44.050(1)(b). And *405 the court so instructed the jury. RP at 397; CP at 53. But it is a defense to second degree rape, an affirmative defense, if "at the time of the offense the defendant reasonably believed that the victim was not mentally incapacitated and/or physically helpless." RCW 9A.44.030(1). Here, the State showed that L.F. was incapable of consent. Mr. Coristine's evidence showed that she was capable of consent and also that he reasonably believed she was capable of consent.
¶ 14 Mr. Coristine maintains that this instruction shifted the initial burden of proving L.F.'s incapacity to him. The instruction did not shift the burden of proof. State v. Powell, 150 Wash.App. 139, 157 n. 12, 206 P.3d 703 (2009). The court in Powell concluded that a "reasonable belief" instruction does not shift the initial burden of proof to a defendant because the instruction becomes relevant only after the jury has found that the State proved each element of the rape charge. 150 Wash.App. at 157 n. 12, 206 P.3d 703. Indeed, the "reasonable belief" instruction did not require Mr. Coristine to prove that L.F. was not mentally incapacitated or physically helpless. It required him to prove only that he believed she was not mentally incapacitated or physically helpless even though, and only after, the jury was convinced that she was. His evidence happened to show both.
¶ 15 Also, the instruction was a correct statement of the law and was therefore not a comment on the evidence. RCW 9A.44.030(1); In re Det. of R.W., 98 Wash. App. 140, 145, 988 P.2d 1034 (1999). And, again, the instruction became relevant to the jury only after it found Mr. Coristine had sex with L.F. while she was mentally incapacitated and incapable of consent. Indeed, it may well have been error not to give the instruction. Powell, 150 Wash.App. at 156-57, 206 P.3d 703.
¶ 16 Mr. Coristine also argues that the instruction was not supported by evidence. His argument ignores the bulk of his presentation to the jury. He denies offering evidence that he reasonably believed L.F. was not mentally incapacitated and/or physically helpless. That is not the way we read this record. He and the witnesses who testified on his behalf all testified at some length about L.F.'s conduct that night. A reasonable inference from this testimony is that not only did Mr. Coristine reasonably believe L.F. was not mentally incapacitated and/or physically helpless but also that everyone else should have so believed.
¶ 17 Mr. Coristine and Ms. Van Dusen said L.F. was not drunk. And Mr. Coristine testified that L.F. was "[p]erfectly conscious and well aware of what was going on, forming perfect sentences. I had no other reason to believe that she would do anything like this to me." RP at 356. In fact, he maintained that L.F. initiated the sex. RP at 356. This evidence supports a "reasonable belief" instruction. In re Pers. Restraint of Hubert, 138 Wash.App. 924, 929, 932, 158 P.3d 1282 (2007). Indeed, the failure to give the instruction might well have been error; it certainly would have compromised the legal implications of Mr. Coristine's evidence of his reasonable belief.
¶ 18 Any error, even if we were to assume error, would be harmless in any event. There is no inconsistency between Mr. Coristine's defense theories and therefore no prejudice attends the affirmative defense. See State v. Jones, 99 Wash.2d 735, 748, 664 P.2d 1216 (1983) (where two defense attorneys wound up arguing conflicting defense theories). Again, the "reasonable belief" instruction did not come into play until after the jury found each element of second degree rape. Thus, even without the instruction, the jury would have found Mr. Coristine guilty, and there is sufficient evidence in this record (L.F.'s testimony) to support that finding.
¶ 19 Here, the jury also had to consider the reasonableness of Mr. Coristine's impressions after it concluded that the victim here was not capable of consent. And he would have been entitled to acquittal based on his showing of reasonable belief if the jury had believed his evidence. He, then, supplied the factual predicate for the instructions but did not want the legal implications of that factual predicate. That distinguishes this case from Jones, 99 Wash.2d at 748-49, 664 P.2d 1216. There, the defendant intended to make no showing that he was insane. The court nevertheless forced him to do so by sua sponte *406 entering an insanity defense and then instructing on an insanity defense. Jones, 99 Wash.2d at 748-49, 664 P.2d 1216. Here, Mr. Coristine presented substantial evidence that his impressions of L.F.'s level of sobriety were reasonable. But the jury was not persuaded.
¶ 20 In sum, there was substantial evidence offered by Mr. Coristine and witnesses on his behalf that contradicted the State's showing that she was not capable of consent. But his evidence also clearly addresses a second and just as important line of defense, an affirmative defense, that even if the State proved L.F. was incapacitated, the jury should still acquit because Mr. Coristine reasonably believed, indeed had every reason to believe, that she could consent. Both theories were before the jury based on the evidence, and the court correctly instructed the jury on both.
¶ 21 We affirm the conviction.
WE CONCUR: KORSMO, A.C.J., and BROWN, J.